WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Strobel, et al., | No. CV-17-01578-PHX-ESW |
| Plaintiffs, | **ORDER** |
| v. | |
| Pinal County Sheriff's Office, et al., | |
| Defendants. | |

Defendants' fully briefed Motion to Dismiss (Doc. 14) is deemed submitted and pending before the Court. All appearing parties have filed consents to the exercise of jurisdiction by a U.S. Magistrate Judge (Docs. 6, 8, 12, 13). The United States District Court has jurisdiction over this action pursuant to 28 U.S.C.§ 1331.

## I. BACKGROUND

On May 10, 2017, Plaintiffs filed a First Amended Complaint (Doc. 1-1) in Pinal County Superior Court of the State of Arizona seeking monetary damages as well as declaratory and injunctive relief for the following causes of action arising from the criminal prosecution of Plaintiff Scott Strobel while he was employed as a Pinal County Deputy Sheriff and his subsequent termination of employment: "Count I—(42 U.S.C.§ 1983, malicious prosecution, against Defendants Babeu, Wilson, and Voyles); Count II—(42 U.S.C.§ 1983, failure to investigate, against Defendants Babeu, Wilson, and Voyles); Count III—(42 U.S.C.§ 1983, retaliatory prosecution, against Defendants Babeu and

Voyles); Count IV—42 U.S.C.§ 1983 (Monell liability) against Defendant Pinal County; Count V—42 U.S.C.§ 1985 (conspiracy to violate civil rights) against Defendants Babeu and Voyles; Count VI—State Law Abuse of Process against Defendants Babeu, Wilson, and Voyles; Count VII—State Law Malicious Prosecution against Defendants Babeu, Wilson, and Voyles; Count VIII—State Law Defamation against Defendants Babeu and Gaffney; Count IX—State Law False Light/Invasion of Privacy against Defendants Babeu and Gaffney; Count X—State Law Intentional Infliction of Emotional Distress against Babeu, Wilson, and Voyles; Count XI—State Law Negligent Infliction of Emotional Distress against Defendants Babeu, Wilson, and Gaffney; Count XII—State Law Negligence against Defendants Babeu, Wilson, and Voyles; Count XIII—State Law Negligence Per Se against Defendants Babeu, Wilson, and Voyles; Count XIV—State Law Aiding and Abetting Tortious Conduct against Defendants Babeu, Wilson, and Voyles; Count XV—(Constructive Discharge against Defendants Babeu and Pinal County." (*Id.*) Plaintiffs allege that all Defendants were acting under color of state law at all times relevant to the case. Plaintiffs sue Defendants Babeu, Wilson, and Gaffney in both their official and individual capacities. Plaintiffs sue Defendant Voyles for "administrative decisions, not prosecutorial ones" made in his individual capacity. (Doc. 1-1 at 4).

On May 23, 2017 Defendants Pinal County Board of Supervisors and Pinal County filed a Notice of Removal pursuant to 28 U.S.C.§§ 1331, 1441, 1446 and LRCiv 3.6 (Doc. 1). On July 21, 2017, Defendants Pinal County, the Pinal County Board of Supervisors, Voyles, Babeu, Wilson, and Gaffney answered Plaintiffs' First Amended Complaint (Doc. 15) and filed the pending Motion to Dismiss (Doc. 14) to which Plaintiffs responded (Doc. 21) and Defendants replied (Doc. 22). On July 24, 2017, Defendants filed a Notice of Service of Non-Party at Fault (Doc. 16). The Court considers Defendants' Motion to Dismiss to be a motion filed pursuant to Fed. R. Civ. P. 12(b)(6) and recognizes that the Court's MIDP Order requires the filing of an answer.

1   All issues are joined.  No further briefing is pending or necessitated by the Federal Rules

2   of Civil Procedure.

3                                    **II. LEGAL STANDARDS**

4           A complaint may be dismissed as a matter of law for failure to state a claim for two

5   reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a

6   cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th

7   Cir. 1990).  The court may dismiss all or part of a complaint sua sponte if the plaintiffs'

8   claims lack an arguable basis in either fact or law.   *See Neitzke v. Williams,* 490 U.S.

9   319, 327-28 (1989); *see also* 28 U.S.C. § 1915(e)(2).  This includes claims based on

10  legal conclusions that are untenable (e.g., claims against defendants who are immune

11  from suit or claims of infringement of legal interest which clearly does not exist).

12  *Id.*; *see also McKeever v. Block,* 932 F.2d 795, 798 (9th Cir. 1991).

13          To survive a Rule 12(b) (6) motion to dismiss, plaintiffs must allege "enough

14  facts to state a claim to relief that is plausible on its face*." Bell Atl. Corp. v. Twombly*,

15  550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining

16  whether the complaint states a claim on which relief may be granted, its allegations of

17  material fact must be taken as true and construed in the light most favorable to

18  Plaintiffs. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

19          If the Court finds that a complaint should be dismissed for failure to state a claim,

20  the Court has discretion to dismiss with or without leave to amend. *Lopez v. Smith,* 203

21  F.3d 1122, 1127 (9th Cir. 2000).   If, after careful consideration, it is clear that a

22  complaint cannot be cured by amendment, the Court may dismiss without leave to

23  amend.  *See Cato v. United States,* 70 F.3d 1103, 1106 (9th Cir. 1995); *Lipton v.*

24  *Pathogenesis Corp.,* 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that "[b]ecause any

25  amendment would be futile, there was no need to prolong the litigation by permitting

26  further amendment").

27

28

## III. FACTS

Assuming as true all well-pled factual allegations contained in Plaintiffs' First Amended Complaint and drawing all reasonable inferences therefrom, Plaintiffs allege the following facts in support of their First Amended Complaint. For purposes of this Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (Doc. 14), the Court disregards any of the Defendants' factual contentions to the contrary. *See, e.g., Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001) ("[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."). However, the Court may still consider any internal discrepancies or factual conflicts it finds within the First Amended Complaint that undermine its plausibility. *See, e.g., Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31- 32 (9th Cir. 2007) (finding that a complaint failed to state a claim upon which relief could be granted based upon factually inconsistent allegations in a complaint that were not pleaded in the alternative, but incorporated into each cause of action).

The Court does take judicial notice of documents of undisputed authenticity referenced in Plaintiffs' First Amended Complaint. "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002). However, the Court does not consider information presented outside of the pleading and does not convert this Motion to Dismiss into a motion for summary judgment. In the Ninth Circuit, "a motion to dismiss is not automatically converted into a motion for summary judgment whenever matters outside the pleading happen to be filed with the court and not expressly rejected by the court." *North Star Int'l v. Arizona Corporation Comm'n*, 720 F.2d 578, 582 (9th Cir. 1983) (holding that district court properly treated motion as motion to dismiss, despite presence of affidavits, where there was no indication of the court's reliance on outside materials and the court expressly stated that it was

dismissing for failure to state a claim upon which relief could be granted); *Keams v. Temple Technical Institute, Inc.*, 110 F.3d 44, 46 (9th Cir. 1997) ("12(b)(6) motion need not be converted into a motion for summary judgment when matters outside the pleading are introduced, provided that 'nothing in the record suggest[s] reliance' on those extraneous materials"). Rather, "a district court must take some affirmative action to effectuate conversion." *Swedberg v. Marotzke*, 339 F.3d 1139, 1142 (9th Cir. 2003). No such action is taken in this case.

Plaintiff Scott Strobel worked as a Pinal County Deputy Sheriff while Defendant Babeu was the Pinal County Sheriff and Defendant Voyles was the Pinal County Attorney. Plaintiff Susan Strobel is Plaintiff Scott Strobel's wife. Plaintiffs' Larry and Logan Strobel are Plaintiffs Scott and Susan Strobel's adopted children. Plaintiff Ryan Strobel is their adult biological son. Defendants were aware of Plaintiff Scott Strobel's family at all times relevant to the case.

From 2008 through the 2012 Pinal County Sheriff's election, Plaintiff Scott Strobel publically supported Defendant Babeu's political opponent through a letter to the editor of the local paper, regional news articles, and Plaintiff's work as the President of the Pinal County Deputies' Association ("PCDA"), which Plaintiff sought to unionize. In 2012 Defendants Voyles and Babeu ran for re-election on a "law and order" ticket under pressure from the Pinal County Board of Supervisors to "keep costs down." Defendants' cost containment objective was contrary to the efforts of the PCDA under Plaintiff's leadership to (i) maintain existing policies regarding the department's weapon arsenal and uniform allowance and (ii) recruit deputies as union members. Under Plaintiff's leadership, the PCDA voted to support Defendant Babeu's opponent, a decision that Plaintiff refused to override despite Defendant Babeu's request that Plaintiff do so.

Defendant Babeu perceived Plaintiff Scott Strobel to be a "political enemy." (Doc. 1-1 at 5).

Defendant Babeu disciplined Plaintiff without cause in 2009, removing him as trainer of the K-9 unit and assigning him a desk position. In 2014 Defendant Babeu

directed subordinates to suspend Plaintiff for eight hours without cause for a complaint received from a third party for which Plaintiff had been cleared of any wrong-doing.

In 2015 a third party accused Plaintiff of having had a sexual relationship with a male minor child. Defendant Babeu initiated, directed, instructed, and guided a criminal investigation and internal investigation of Plaintiff through the Pinal County Sheriff's Office. Defendant Babeu inserted himself in the charging decision process of the Pinal County Attorney's Office and conspired with Defendant Voyles to bring charges against Plaintiff without probable cause. Defendant Wilson was the detective assigned to the criminal investigation. Despite the existence of exculpatory evidence that Defendant Wilson found during his investigation, this exculpatory information was not presented to the grand jury. Instead, false and misleading information was presented to the grand jury. Plaintiff was arrested and charged with Luring a Minor for Sexual Exploitation and multiple counts of Sexual Conduct with a Minor. Plaintiff thereafter filed a motion for remand to the grand jury. "The Pinal County Attorney's Office nullified their own proceeding and took the case to a second Grand Jury" which issued a "NO TRUE BILL" finding. (Doc. 1-1 at 8). The criminal case was thereafter dismissed on June 20, 2016 and "terminated in [Plaintiff's] favor." (Id.)

The Pinal County Sheriff's Office finished its internal affairs investigation of Plaintiff on March 24, 2016, and the investigation was "signed off on" by a supervisor on March 31, 2016. (Id.) However, Plaintiff was given a notice of termination of employment on March 23, 2016.

Defendant Babeu publicized Plaintiff's termination. Defendants Babeu and Voyles publicized the criminal investigation of Plaintiff.

As a direct and proximate result of Defendants' actions, Plaintiffs sustained emotional, physical, and economic damages.

## IV. DISCUSSION

Defendants move to dismiss Plaintiffs' First Amended Complaint on the following four bases: (i) failure to adequately plead Monell liability under 42 U.S.C.§ 1983 as to

Pinal County, the Pinal County Board of Supervisors, and all persons sued in their official capacities; (ii) absolute or qualified immunity bars all federal claims against persons sued in their individual capacities; (iii) Pinal County and the Pinal County Board of Supervisors are not proper parties for any state law claim; and (iv) failure to serve a timely notice of claim and the application of immunity bar all state law claims against individually named Defendants. Defendants do not indicate in their briefing to which Counts their various arguments specifically are directed. For the following reasons, the Motion to Dismiss will be granted in part and denied in part. The Court will grant Plaintiffs leave to file a Second Amended Complaint to correct the deficiencies in the First Amended Complaint that are identified herein.

## A. Count I: Malicious Prosecution

To set forth a claim for malicious prosecution, Plaintiffs must allege that (i) Defendants initiated or took active part in the prosecution of a criminal action against Plaintiff Scott Strobel; (ii) the criminal action terminated in Plaintiff Scott Strobel's favor; (iii) Defendant acted without probable cause; (iv) Defendant acted with malice or "a primary purpose other than bringing him to justice"; and (v) the malicious conduct resulted in injury to Plaintiff Scott Strobel. *Donahoe v. Arpaio,* 986 F. 2d 1091, 1103 (D. Ariz. 2013). Defendant Voyles claims entitlement to absolute or qualified immunity. Defendants Babeu and Wilson claim entitlement to qualified immunity. The Court will address the absolute immunity issue as to Defendant Voyles first, then will address qualified immunity as to Defendants Voyles, Babeu, and Wilson.

### 1. Voyles: Absolute Immunity

#### i. Legal Standards

In *Tenney v. Brandhove*, 341 U.S. 367 (1951), the Supreme Court held that § 1983 is "to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). "[I]n determining immunity, we examine 'the nature of the function performed, not the identity of the actor who performed it.'" *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting

*Forrester v. White*, 484 U.S. 219, 229 (1988)).  In deciding whether a government official's conduct is immune from liability, courts have examined "the immunity historically accorded the relevant official at common law and the interests behind it." *Imbler*, 424 U.S. at 421.

In *Imbler*, the Supreme Court concluded that prosecutors have the same absolute immunity under § 1983 as previously established under common law.  424 U.S. at 427 (holding that a state prosecutor has absolute immunity for the initiation and pursuit of criminal prosecution, including presentation at trial).  Consistent with common law, prosecutors performing the "traditional functions of an advocate" are entitled to absolute immunity from liability for damages under § 1983. *Genzler v. Longanbach*, 410 F. 3d 630, 636 (9th Cir. 2005).  A prosecutor performing "administrative functions or 'investigative functions normally performed by a detective or police officer,'" rather than the functions of an advocate in the course of the judicial process, is not entitled to absolute immunity, but rather qualified immunity. *Genzler*, 410 F. 3d at 636 (quoting *Kalina*, 522 U.S. at 126.  But as the Ninth Circuit has noted, "[d]etermining what functions are prosecutorial is an inexact science." *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012).

The Supreme Court has stated that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993).  In addition, absolute prosecutorial immunity has been rejected in cases involving a prosecutor's statements to the public and press. *See Buckley,* 509 U.S. at 278; *Garmon v. County of Los Angeles*, 828 F. 3d 837 (9th Cir. 2016); *Crowe v. County of San Diego*, 13 F. App'x 560 (9th Cir. 2001) (defamatory statements made in conjunction with an unconstitutional arrest found actionable under § 1983 and not entitled to absolute or qualified immunity).

### ii. Analysis

To the extent Count I seeks to hold Defendant Voyles liable for actions he took which were traditional functions of an advocate and judicial in nature, Defendant Voyles

is entitled to absolute immunity.[1]  To the extent Count I is based on Defendant Voyles'

alleged administrative activities and routine police activities, Defendant Voyles would be

only entitled to qualified immunity, which is discussed in the following section.  *See*

*Buckley*, 509 U.S. at 276 ("[a] prosecutor may not shield his investigative work with the

aegis of absolute immunity merely because . . . that work may be retrospectively

described as 'preparation' for a possible trial."); *Hampton v. Chicago,* 484 F.2d 602, 608-

09 (7th Cir. 1973) (denying absolute immunity for prosecutor who participated in

planning and execution of police raid on suspected weapons cache)); *Herb Hallman*

*Chevrolet v. Nash-Holmes,* 169 F.3d 636, 642 (9th Cir. 1999) ("A prosecutor may only

shield his investigative work with qualified immunity."); *Burns v. Reed*, 500 U.S. 478,

495-96 (1991) (rejecting government's argument that giving legal advice is related to a

prosecutor's role in screening cases for prosecution, explaining that "[a]lmost any action

by a prosecutor, including his or her direct participation in purely investigative activity,

could be said to be in some way related to the ultimate decision whether to prosecute, but

we have never indicated that absolute immunity is that expansive"); *Genzler*, 410 F.3d at

641 (concluding prosecutor "actively directing investigative, police-like actions" before

preliminary hearing not entitled to absolute immunity).

---

[1] In his Response opposing Defendants' Motion to Dismiss, Plaintiff asserts that "Voyles was engaged in administrative tasks, not merely prosecutorial ones.  Voyles did not perform any prosecutorial role in Strobel's case (and Strobel has not alleged one) and never stepped foot into a courtroom in his prosecutorial capacity."  (Doc. 21 at 4).  The Court cannot consider any new factual allegations contained in the Response. *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original).
    The First Amended Complaint alleges that "Voyles set expectations for members of his office to file criminal charges against Mr. Strobel, despite the lack of probable cause."  (Doc. 1-1 at 8, ¶ 45).  This concerns a prosecutorial action as it asserts that Defendant Voyles, in his capacity as Pinal County Attorney, directed the filing of charges against Plaintiff Scott Strobel.  The Supreme Court has held that supervising prosecutors have absolute immunity from § 1983 liability for claims arising out of their administrative responsibilities for supervision, training, and the management of information systems. *See Van De Kamp v. Goldstein*, 555 U.S. 335, 345-46 (2009); *Garmon v. Cnty of Los Angeles*, 828 F.3d 837, 845 (9th Cir. 2016) ("An attorney supervising a trial prosecutor who is absolutely immune is also absolutely immune.") (citing *Van De Kamp*, 555 U.S. at 345-46).

### 2. Defendants Voyles, Babeu, and Wilson: Qualified Immunity

#### i. Legal Standards

Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and applies to "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity is "an immunity from suit rather than a mere defense to liability," and therefore "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft,* 563 U.S. at 735 (quoting *Harlow*, 457 U.S. at 818).

In deciding whether a government official is entitled to qualified immunity for his conduct, the United States Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001) set forth a two-step protocol requiring a court to determine (i) whether a constitutional right has been violated and (ii) whether the constitutional right was clearly established at the time of the alleged violation. For a right to be clearly established for purposes of the second step, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court revisited the two-step *Saucier* protocol and determined that, while it is often appropriate and beneficial, it is not mandatory in all cases. District courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should

be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236 (holding that the *Saucier* protocol is not mandatory). If the Court's answer to either prong of the qualified immunity analysis is "no," then the Defendant cannot be held liable for damages. *Glenn v. Washington Cnty.*, 673 F. 3d 864, 870 (9th Cir. 2011). Although courts have discretion in deciding which prong to address first, the Supreme Court has explained that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998).

### ii. Analysis

Count I is brought under the Fifth and Fourteenth Amendments. (Doc. 1-1- at 9, ¶ 55). "[T]he Fifth Amendment's due process clause applies only to the federal government." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). Further, Plaintiff cannot proceed on a theory of malicious prosecution under the Fourteenth Amendment's due process clause. *Albright v. Oliver*, 510 U.S. 266, 268 (1994). The Supreme Court in *Albright* held that a malicious prosecution case should be brought under the Fourth Amendment, which prevents illegal searches and seizures without probable cause. *Albright*, 510 U.S. at 274. The Court will not construe Count I as alleging a Fourth Amendment violation as Plaintiffs are represented by counsel and "[i]t is well established that the plaintiff is the 'master' of his complaint and may decide what law he will rely upon." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (internal quotation marks omitted).

The Court finds that Count I does not sufficiently allege a violation of Plaintiff Scott Strobel's constitutional rights. Consequently, Defendants Voyles, Babeu, and Wilson are entitled to qualified immunity with respect to Count I. *See Siegert v. Gilley,* 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a

constitutional right at all," and courts should not "assum[e], without deciding, this preliminary issue"). The Court will grant Defendants' Motion to Dismiss as to Count I.[2]

### B. Count II: Failure to Investigate

Count II presents a "failure to investigate" claim against Defendants Voyles, Babeu, and Wilson. Count II alleges that Defendant Babeu continued to investigate Plaintiff Scott Strobel, both criminally and internally, "without probable cause after his office failed, despite their efforts, to develop corroborating evidence to support probable cause." (Doc. 1-1 at 10, ¶ 62). Plaintiffs also allege that "Defendants Babeu and Wilson failed to consider exculpatory evidence, failed to conduct even a minimally competent investigation, and pressed forward without probable cause." (*Id.*, ¶ 66). In addition, Plaintiffs contend that Defendants Babeu and Voyles "conspired to initiate and continue a criminal prosecution against [Plaintiff] without probable cause." (*Id.*, ¶ 67).

#### 1. Voyles: Absolute Immunity

The Ninth Circuit has determined that a prosecutor is absolutely immune from liability arising out of a failure to investigate before filing charges.[3] *Broam v.*

---

[2] Citing to *Pulliam v. Allen*, 466 U.S. 522 (1994), Plaintiff contends that "[e]ven if the individual Defendants were entitled to immunity from a suit for money damages, the asserted immunities do not operate to defeat claims for equitable relief. . . . Strobel included a request for declaratory judgment and other equitable relief in his First Amended Complaint." (Doc. 21 at 5). *Pulliam* involves judicial immunity. In 1996, Congress passed the Federal Courts Improvement Act. Pub.L. No. 104–317, 110 Stat. 3847. That Act amended §1983 to supersede *Pulliam* and prohibit injunctive relief against judges. *See MacPherson v. Town of Southampton,* 664 F.Supp.2d 203, 211(E.D.N.Y. 2009) ("Congress . . . effectively reversed *[Pulliam]* with regard to injunctive relief with the enactment of the Federal Courts Improvement Act of 1996.").
   Defendants' Reply (Doc. 22) does not address Plaintiffs' claim that the Section 1983 claims may proceed against Defendants with respect to the request for declaratory relief. The Counts raising Section 1983 claims specifically request only damages. At the end of the First Amended Complaint, Plaintiffs request that the Court "[e]nter an Order declaring the conduct of Defendants Babeu and Voyles unconstitutional." (Doc. 1-1- at 20). The Court does not find that the First Amended Complaint adequately pleads entitlement to declaratory relief. "Declaratory relief should seek to resolve prospective disputes and should not be sought to correct past wrongs where other remedies exist." *Kim v. City of Belmont*, Case No. 17-cv-02563-JST, 2018 WL 500269, at \*14 (N.D. Cal. Jan. 22, 2018) (citing *United States v. Washington*, 759 F.2d 1353, 1356-57 (9th Cir. 1983) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.")).

[3] It is noted that under Arizona state law "it is the grand jury that directs inquiries

*Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) ("A prosecutor is absolutely immune from liability  for failure to investigate the  accusations  against  a  defendant  before  filing charges."). Prosecutors also have absolute immunity for (i) their professional evaluation of a witness, even if that judgment "is harsh, unfair or clouded by personal animus," *Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005); (ii) for  knowingly using false testimony, *Broam*, 320 F.3d at 1030; and (iii) for withholding exculpatory material before trial, during trial, or after conviction, *id*. *See also Imbler*, 424 U.S. at 431 n.34 (explaining that the "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion"); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 679 (9th Cir. 1984) (holding that a district attorney's duty to preserve exculpatory evidence "would arise from his role as an officer of the court charged to do justice. . . .  An act or an omission concerning such a duty cannot be construed as only administrative or investigative; it too is necessarily related to [the prosecutor's] preparation to prosecute."); *Fullman v. Graddick,* 739 F.2d 553, 559 (11th Cir. 1984) (holding that "[t]he district court properly dismissed plaintiff's claims that [the prosecutor]  conspired  to  withhold  evidence  and  to  create  and  proffer  perjured testimony").  The Court finds that Defendant Voyles is entitled to absolute immunity as to Count II.

### 2.  Defendants Babeu and Wilson: Qualified Immunity

As mentioned, Count II alleges that Defendants Babeu and Wilson "failed to consider  exculpatory  evidence,  failed  to  conduct  even  a  minimally  competent investigation, and pressed forward without probable cause."  (Doc. 1-1 at 10, ¶ 66). "The initiation of a criminal investigation in and of itself does not implicate a federal constitutional right. The Constitution does not require evidence of wrongdoing or reasonable suspicion of wrongdoing by a suspect before the government can begin

into public crimes.  The prosecutor's duty is to assist the grand jury in its investigations; the prosecutor may not exercise dominion over those investigations by evading the grand jury's will."  *Gershon v. Broomfield*, 642 P.2d 852, 855 (Ariz. 1982) (holding that assistant attorney general acted in excess of his authority when he issued a subpoena in a case pending before a grand jury without first obtaining grand jury's authorization).

investigating that suspect." *Rehberg v. Paulk,* 611 F.3d 828, 850 n.24 (11th Cir. 2010); *Sanders v. City and County of San Francisco,* 226 F. App'x 687, 689 (9th Cir. 2007) ("Appellants point to no case law that supports the proposition that probable cause must exist before an investigation can commence. That is not surprising, given that the impetus behind criminal investigations is to develop probable cause."); *Brewster v. Shasta County*, 27 F. App'x 908, 914 (9th Cir. 2001) ("[T]he failure to obtain DNA tests of the victim's clothing does not implicate an independent clearly established constitutional right, it is further circumstantial evidence of improper motive."); *Devereaux v. Abby*, 263 F.3d 1070, 1083 (9th Cir. 2001) (Judge Fernandez concurring) ("Devereaux has not spelled out a constitutional right to have investigations conducted in any particular manner.").

The Court finds that Count II does not sufficiently allege a violation of Plaintiff Scott Strobel's constitutional rights.  As a result, Defendants Babeu and Wilson are entitled to qualified immunity as to Count II.    The Court will grant Defendants' Motion to Dismiss as to Count II.

### C.  Count III: Retaliatory Prosecution

Count III alleges that Plaintiff Scott Strobel's "protected First Amendment speech motivated the conspiracy Babeu and Voyles entered into, and Strobel was prosecuted in retaliation for his protected exercise of free speech."   (Doc. 1-1 at 10, ¶ 71).   "To demonstrate a claim for retaliatory prosecution in violation of [Plaintiff Scott Strobel's] First Amendment rights, Plaintiffs must provide evidence showing that (1) Defendants possessed an impermissible motive to interfere with [his] First Amendment rights, (2) Defendants' conduct would chill a person of ordinary firmness from future First Amendment activities, and (3) that the Defendants would not have engaged in the conduct in question but for the retaliatory motive."  *Dowling v. Arpaio*, 858 F.Supp.2d 1063, 1071 (D. Ariz. 2012) (citing *Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1300 (9th Cir.1999).  To satisfy the third element, Plaintiffs must demonstrate the absence of probable cause and show that Defendants' unconstitutional inducement

"infected the prosecutor's decision to bring the charge." *Hartman v. Moore,* 547 U.S. 250, 265 (2006).

### 1. Defendant Voyles: Absolute Immunity

The Ninth Circuit has noted that prosecution claims are really "for successful retaliatory *inducement* to prosecute" because they can only be maintained against officials, such as investigators, who may persuade prosecutors to act. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1234 (9th Cir. 2006) (quoting *Hartman*, 547 U.S. at 262) (emphasis in original). "[An] action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute. Instead the defendant will be a nonprosecutor, an official, like an inspector . . . ." *Hartman*, 547 U.S. at 261-62. The Court finds that Defendant Voyles is entitled to absolute immunity as to Count III. Defendants' Motion to Dismiss will be granted as to Defendant Voyles with respect to Count III.

### 2. Defendant Babeu: Qualified Immunity

The First Amended Complaint states that Plaintiffs publicly supported Defendant Babeu's political opponent during a re-election campaign and that as a result, Defendant Babeu sought to prosecute Plaintiff Scott Strobel without probable cause. (Doc. 1-1 at 5-6). The Court finds that Count III sufficiently alleges a violation of Plaintiff Scott Strobel's constitutional rights. The Court further finds that the right was clearly established at the time of the violation, defeating at this juncture Defendant Babeu's claim of qualified immunity. *See Lacey*, 693 F.3d at 916 ("Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right[';] . . . the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.") (quoting *Hartman,* 547 U.S. at 256). Defendants' Motion to Dismiss will be denied as to Defendant Babeu with respect to Count III.

### D. Count IV: Monell Liability

Count IV is directed solely against Defendant Pinal County. In Count IV, Plaintiff seeks damages "under 42 U.S.C. § 1983 and the First, Fourth, Fifth, and Fourteenth Amendment for violation of his Constitutional rights under color of state law." (*Id.*). Count IV specifically alleges that (i) Defendants Babeu and Voyles were policy makers for Pinal County; (ii) Pinal County Sheriff's Office through Babeu had a policy and practice of using internal investigations for political purposes; (iii) a politically motivated decision to arrest Plaintiff Strobel without probable cause was a result of these policies and practices; and (iv) Defendant Voyles had a policy and practice of conspiring with Defendant Babeu for political purposes and using the power of the Pinal County Attorney's office to further Defendant Babeu's political ends. Defendants assert that Plaintiffs have failed to allege sufficient facts to support a claim against Pinal County pursuant to *Monell v. Dep't. of Social Services of City of N.Y.,* 436 U.S. 658 ( 1978).

To prevail in a 42 U.S.C. § 1983 claim, Plaintiffs must show that (1) acts by Defendants (2) under color of state law (3) deprived them of federal rights, privileges or immunities and (4) caused them damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)).

Here, Plaintiffs allege in Count IV that their First, Fourth, Fifth, and Fourteenth amendment rights were infringed by Defendants Babeu and Voyles as policy-makers for Pinal County. (Doc. 1-1 at 11, ¶ 74); *see Graham v. Connor*, 490 U.S. 386, 394 (1989) (stating analysis begins by identifying the specific constitutional right allegedly infringed). "Whether an official is a policy-maker for *Monell* purposes is a question governed by state law." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)). Plaintiffs allege

that Defendants Babeu and Voyles' policies and practices resulted in (i) an internal affairs investigation of Plaintiff Scott Strobel for political purposes as well as (ii) the prosecution and arrest of Plaintiff Scott Strobel for political purposes without probable cause.

Under Section 1983 "a person" subject to liability can be either (i) an individual sued in his individual or official capacity or (ii) a local governing body. *See Monell*, 436 U.S. at 662, 690. However, a local government cannot be held liable for the acts of its employees under the theory of *respondeat superior*. *Bd. Of County Comm'rs of Bryan County Okla. v. Brown*, 520 U.S. 397, 403 (1997). Simply because a municipality employs a wrong-doing official does not create liability on behalf of the municipality.

Defendants correctly note that there are three theories under which a municipality may be held liable for constitutional violations under § 1983: (1) commission, (2) omission, and (3) ratification. *See Clouthier v. Cnty. of Contra Costa*, 591 F. 3d 1232, 1249 (9th Cir. 2010), *overruled on other grounds, Castro v. Cnty. of Los Angeles*, 833 F. 3d 1060 (9th Cir. 2016); *Aranda v. City of McMinnville*, 942 F. Supp. 2d 1096, 1109 (D. Or. 2013). In this case, Plaintiff alleges that Pinal County should be held liable under § 1983 because either (i) "the individual who committed the constitutional tort was an official with final policy-making authority" or such an official "ratified a subordinate's unconstitutional decision or action and the basis for it," *Gillette v. Delmore*, 979 F. 2d 1342, 1346-47 (9th Cir. 1992), or (ii) "implementation of [Pinal County's] official policies or established customs inflict[ed] the constitutional injury." *Monell*, 436 U.S. at 708. The Court has found that Plaintiffs have alleged sufficient facts to support the claim in Count III that Defendant Babeu committed a constitutional tort against Plaintiff Scott Strobel. The Court takes judicial notice that Defendant Babeu, as Pinal County Sherriff, was a final policy-maker under Arizona law. *See United States v. Maricopa County*, 915 F.Supp.2d 1073, 1084 (D. Ariz. 2012) ("Under Arizona law, the Sheriff has final policymaking authority with respect to County law enforcement and jails, and the County can be held responsible for constitutional violations resulting from these policies.").

1 Pinal County's own cost-saving policies as allegedly implemented by Defendants Babeu

2 and Voyles in this case may also support Pinal County's liability as a party Defendant in

3 Count IV. The Motion to Dismiss will be denied as to Count IV. [4]

4 **E. Count V: Conspiracy Claim under 42 U.S.C. § 1985**

5 Count V of the First Amended Complaint presents a claim under 42 U.S.C. § 1985.

6 (Doc. 1-1 at 11-12). Section 1985, the Ku Klux Klan Act of 1871, was enacted by the

7 Reconstruction Congress to protect individuals, primarily African Americans, from

8 conspiracies to deprive them of their civil rights. *Sever v. Alaska Pulp Corp.*, 978 F.2d

9 1529, 1536 (9th Cir. 1992). "The statute prohibits three types of conspiracies: (1) a

10 conspiracy to prevent an officer from performing his or her duties, (2) a conspiracy to

11 obstruct justice by intimidating a party, witness, or jury, and (3) a conspiracy to deprive a

12 person of his or her rights or privileges. 42 U.S.C. § 1985." *Branon v. Debus*, 289 F.

13 App'x 181, 182 (9th Cir. 2008). Count V relies on the third subsection as Plaintiffs

14 allege that "Babeu and Voyles conspired to bring charges against Mr. Strobel without

15 probable cause and in violation of his civil rights." (Doc. 1-1 at 7, ¶ 41). Yet to justify

16 relief under Section 1985(3), there "must be some racial, or perhaps otherwise class-

17 based, invidiously discriminatory animus behind the conspirators' action." *Griffin v.*

18 *Breckenridge,* 403 U.S. 88, 102 (1971). The First Amended Complaint does not assert

19 that the alleged conspiracy of Defendants Voyles and Babeu was motivated by any race

20 or other class-based discriminatory animus. *Branon*, 289 F. App'x at 182 (affirming

21 dismissal of Section 1985(3) claim for failure to state a claim where complaint did not

22 assert that the alleged conspiracy was motivated by any race or other class-based

23 discriminatory animus); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding

24 that Section 1985 conspiracy claim was properly dismissed because plaintiff had failed to

25 allege facts establishing invidious discrimination). Defendants' Motion to Dismiss will

26

27     [4] As none of the Section 1983 claims have survived as to Defendant Voyles, The Court does not address Defendants arguments that Defendant Voyles' alleged conduct cannot support a *Monell* claim. *See Poppell v. City of San Diego,* 149 F.3d 951, 970 (9th

28 Cir. 1998) ("The City of San Diego cannot be held liable for such acts [of negligence] where its employees are immune from liability.").

1  be granted as to Count V.[5]

2  ### F. Counts VI Through XV: State Law Claims

3  ### 1. Compliance with Arizona's Notice of Claims Statute

4  The First Amended Complaint contains a number of state law claims. ARIZ. REV.

5  STAT. § 12–821.01(A) requires that "[p]ersons who have claims against a public entity or

6  a public employee shall file claims with the person or persons authorized to accept

7  service for the public entity or public employee as set forth in the Arizona rules of civil

8  procedure within one hundred eighty days after the cause of action accrues." Failure to

9  comply with the mandatory requirements of Section 12-821.01 would bar Plaintiffs' state

10  law claims. *See McGrath v. Scott,* 250 F.Supp.2d 1218, 1236 (D. Ariz. 2003); *Pritchard*

11  *v. State,* 163 Ariz. 427, 432 (1990) ("The requirement of filing a claim with the state is

12  mandatory and an essential requisite to plaintiff's cause of action.").

13  In their Motion to Dismiss, Defendants assert that Plaintiffs did not properly serve

14  a notice of claim on Defendants in accordance with ARIZ. REV. STAT. § 12-821.01. (Doc.

15  14 at 14-16). Defendants have attached the notices of claim to the Motion to Dismiss.

16  As discussed, the Court will not consider information presented outside of the pleading

17  and will not convert Defendants' Motion to Dismiss into a motion for summary

18  judgment. Defendants' Motion to Dismiss will be denied as to Counts VI through XV. If

19  Plaintiffs file a Second Amended Complaint, Plaintiffs should allege the facts

20  establishing compliance with ARIZ. REV. STAT. § 12-821.01 as to all Defendants. If

21  Defendants maintain their position that Arizona's notice of claims statute bars Plaintiffs'

22  claims, it should move for summary judgment rather than move to dismiss.

23  ### 2. Count XV: Constructive Discharge Claim Against Defendants Babeu and Pinal County

24

25  Count XV, which alleges a constructive discharge claim, is the only state law

26  _____

    [5] To the extent Plaintiff raises a conspiracy claim under 42 U.S.C. § 1983,

27  "[c]onspiracy is not itself a constitutional tort under § 1983. . . . It does not enlarge the
    nature of the claims asserted by the plaintiff, as there must always be an underlying

28  constitutional violation. Conspiracy may, however, enlarge the pool of responsible
    defendants by demonstrating their causal connections to the violation[.]" *Lacey*, 693
    F.3d at 935.

- 19 -

claim that names Pinal County as a Defendant. (Doc. 1-1 at 19). Defendants assert that Pinal County is not a proper party for any state law claim. (Doc. 14 at 12). The Motion to Dismiss will be denied as to Defendant Pinal County with respect to Count XV. *See Barth v. Cochise Cnty*, 138 P.3d 1186 (Ariz. Ct. App. 2006) (deputy sheriff filed action against county for constructive discharge, which was dismissed for failure to comply with notice of claims statute).

## V. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** granting in part and denying in part Defendants' Motion to Dismiss (Doc. 14) as set forth herein.

**IT IS FURTHER ORDERED** dismissing Counts I, II, and V.

**IT IS FURTHER ORDERED** dismissing Defendant Voyles from Count III.

**IT IS FURTHER ORDERED** that no later than thirty days from the date of this Order, Plaintiff may file a Second Amended Complaint to correct the deficiencies in the First Amended Complaint that are identified herein.

**IT IS FURTHER ORDERED** that any future dispositive motions shall specifically address the Count(s) for which the moving party requests a dispositive ruling, consistent with the format of this Order.

Dated this 8th day of March, 2018.

_____
Eileen S. Willett
United States Magistrate Judge